**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
FRANK STISO and MARLENE                 :
STISO,                                  :
                                        :        Civil Action No. 13-5741 (FLW)
                                        :
            Plaintiffs,                 :
                                        :              **OPINION**
      v.                                :
                                        :
STATE FARM FIRE AND                     :
CASUALTY CO.,                           :
                                        :
            Defendant.                  :
_____ :

**WOLFSON, District Judge:**

      In this suit, Plaintiffs Frank and Marlene Stiso ("Plaintiffs" or the "Stisos"), husband and wife, seek, _inter alia_, insurance coverage from Defendant State Farm Fire and Casualty Co. ("Defendant or "State Farm"), under their homeowners' policy for extensive interior water damage to their home that occurred during Hurricane Sandy.  After discovery has concluded, State Farm moves for summary judgment on Counts 1-3 of the Complaint: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) bad faith.[1]  For the reasons that follow, the Court **GRANTS** State Farm's motion.

### BACKGROUND

      The following facts are undisputed unless otherwise noted.  The Stisos own a shore house

---

[1]     Plaintiffs also assert the following causes of action in their Complaint: (1) violation of the New Jersey Consumer Fraud Act; (2) negligent misrepresentation; and (3) fraudulent concealment. While Defendant argues on this motion that the Complaint should be dismissed in its entirety, Defendant has not explicitly moved for summary judgment on these claims, and Plaintiffs have not previously consented to their dismissal.

located at 210 Parkway, Point Pleasant Beach, New Jersey ("The Property").[2] Def.'s Stmt. of Mat.

Facts Not in Disp. ("Def.'s Stmt.") at ¶ 2. The Property is situated two and one half blocks from

the Atlantic Ocean. *Id.* at ¶ 3. At that time, the house was a 3-bedroom split level dwelling; the

upper level of the house contained a front porch, a kitchen, living room, and dining room, and the

lower level contained a TV room, a full bathroom, a laundry room, and an office. *Id.* at ¶¶ 4-6.

On October 29, 2012, Hurricane Sandy hit New Jersey and it affected the neighborhood where the

Property was located. Pls.' Stmt. of Disp. Mat. Facts ("Pls.' Stmt.") at ¶ 1.[3] The Stisos were not

at the Property when the hurricane hit. Def.'s Stmt. at ¶ 10. At some point during the storm, the

lower level of the Property became inundated with approximately four-feet, six-inches of water,

while there was approximately one foot of water on the upper level of the Property. *Id.* at ¶ 14;

Pl.'s Stmt. at ¶ 2. Because of the water damage, Plaintiffs claim that they suffered $154,185.70 in

damages.

On November 1. 2012, the Stisos filed a claim for water damage with State Farm under

their Homeowners Policy, No. 30-33-9803-1 (the "Policy"), Def.'s Stmt. at ¶ 24, which only

covers damage resulting from the overflow of a drain due to clogged plumbing, but not damage

---

[2]    There is a dispute whether the Property was Plaintiffs' primary residence or a vacation home. For the purposes of this motion, the distinction is not relevant.

[3]    Plaintiffs' Response to Defendant's Statement of Material Facts not in Dispute violates L. Civ. R. 56.1. Under that Rule, "[t]he opponent of summary judgment shall furnish, with [his] opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1. Here, Plaintiff's Response does not address each of Defendant's statements, but rather, Plaintiffs only take issue with certain paragraphs. In that regard, the paragraphs in Defendants' Statements that are not disputed by Plaintiff will be deemed admitted, "unless they are controverted by the evidence in the record." *See Boswell v. Eoon*, 452 Fed. Appx. 107, 112 (3d Cir. 2011).

from flooding.[4]  Def.'s Stmt. at ¶ 9; Pls.' Stmt. at ¶ 4.  The Policy reads in relevant part:

**SECTION I – LOSSES NOT INSURED**

*               *               *

2.      We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded events to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

*               *               *

2.c.    **Water**, meaning:

(1)     flood, surface water, waves, (including tidal wave, tsunami, and seiche) tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not; except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;**

(2)     water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;**

(3)     water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure; or

(4)     material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

Homeowners Policy, No. 30-33-9803-1, Back-Up Sewer or Drain Endorsement, pp. 1-2.

---

[4]      In addition to insurance proceeds from the Policy, Plaintiffs received disaster assistance from the Federal Emergency Management Administration in the amount of $31,900.

**SECTION I – ADDITIONAL COVERAGES**

> **Back-Up of Sewer or Drain.**  We cover the dwelling used as a private residence or the **residence premises** shown in the Declarations for direct physical loss caused by back-up of water or sewage, subject to the following:
>
> a.    the back-up must be directly or immediately caused solely by water or sewage:
>
> > (1)    from outside the **residence premises** plumbing system that enters through a sewer or drain located inside the interior of the dwelling; or
> > (2)    which enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the dwelling designed to remove subsurface water drained from the foundation area.
>
> b.    Coverage does not apply if:
>
> > (1)    the loss is caused by your negligence; or
> > (2)    the loss occurs or is in progress within the first 5 days of the inception of this endorsement; unless the coverage is continued as part of your policy renewal.

*Id.* at p. 1.

After the Stisos filed their insurance claim with State Farm, claim representative, Bradley Grusendorf, inspected the loss at the Property.  The following version of events are the result of Defendant's investigation.  During Grusendorf's initial inspection of the exterior of the house, he observed exterior water lines on Plaintiffs' front door and the right rear of the house, which he determined were caused by flood waters.  Def.'s Stmt. at ¶ 26.  More particularly, the water line on the rear of the house was at a height of approximately 4 feet.  *Id.*  As to the interior, Grusendorf observed a water line in the lower level of the house at a height of approximately 4 feet that he attributed to flood waters that had entered the house.  *See* Grusendorf Dec. at ¶ 4.  Grusendorf also observed "greasy oily-type" residue along the brick fireplace in the TV room, which measured at 3-4 inches in height.  Def.'s Stmt. at ¶ 29.  On the upper level of the house, Grusendorf concluded that the 1-foot of water that accumulated on that level was caused by the external flood waters.  *Id.* at ¶ 30.  Based on his investigation, Grusendorf opined that, at most, 3-4 inches of water had

backed up from one of the drains situated in the lower level of the house, "and then the surface water or floodwater mixed with the back-up of the sewer/drain and carried that up to the upper level to the level of the waterlines on the inside . . . of the house." *Id.* at ¶ 31.

On December 6, 2012, Grusendorf returned to the Property with State Farm Trainer, Jason Crosson, for a second inspection.  During this inspection, both Grusendorf and Crosson confirmed the previous opinions reached by Grusendorf.  Ultimately, State Farm determined that the Policy covered up to 6-inches of water, but denied the claim as to the balance of the water damage because the remainder was caused by external flood, which is excluded from coverage.  *Id.* at ¶ 36. Consistent with that decision, State Farm paid out Plaintiffs' claim in the amount of $43,305.60.[5]

Plaintiffs were dissatisfied with State Farm's determination.  Indeed, Plaintiffs claim, albeit they were not present at the Property when Hurricane Sandy hit, that the flooding that occurred in the Property was all caused by a massive backup of sewer and flood waters within the Property. Pls.' Stmt. at ¶ 1.  Plaintiffs further claim that the backup of the drain water in their house reached a height above 4 feet, and that none of the flood water from the outside flowed into the dwelling. *Id.* at ¶ 3.  Plaintiffs submitted their repair estimate to State Farm in the amount of $154,185.70, which included repairs to their entire house, including the flood damage to both the exterior and interior of their house.  *See* Estimate of Repairs dated February 12, 2013.

In response to Plaintiffs' inquiry, on March 5, 2013, State Farm's claim representative, Awais Farooq, further inspected the Property and attempted to reconcile the scope of the repair estimates from both State Farm and Plaintiffs. Def.'s Stmt. at ¶ 41.  While Farooq confirmed most

---

[5]      At his deposition, Grusendorf explained that even though State Farm only extended coverage for water damage to a height of 6-inches, the amount of paid out to the Stisos was sufficient to remediate and repair the entire lower level of their house.  *See* Grusendorf Dep. at T93:1-9.

of the findings by previous claim representatives, Farooq identified a few more items that he added to State Farm's estimate, which totaled $4,403.12 of additional coverage payout. *Id.* at ¶ 43.

On May 31, 2013, Plaintiffs' counsel wrote to State Farm advising that Plaintiffs intended on making repairs to the Property, and on June 18, 2013, State Farm team manager John McDonald and claim representative Doris Benitez inspected the Property once again. *Id.* at ¶ 52. These representatives also reconfirmed State Farm's previous determinations. *Id.* at ¶ 53.

In October 2013, Plaintiffs entered into a contract with a contractor for the renovation and upgrade of their home. *Id.* at ¶ 55. The renovation involved removing the back half the house, rebuilding it at the same height as the kitchen, living room, and dining room, and building four new bedrooms over the new back half of the house, including a new master bedroom suite and bathroom. The cost of the repairs exceeded $250,000. *Id.* at ¶¶ 56, 57.

## DISCUSSION

### I.       Standard of Review

A moving party is entitled to judgment as a matter of law where there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000) (citing Fed. R. Civ. P. 56(c)). The burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, the nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates a genuine issue of material fact. *See* Fed R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. In conducting a review of the facts, the non-moving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks*, 204 F.3d at 105 n.5 (citing *Anderson*, 477 U.S. at 249).

## II.     Breach of the Insurance Policy

At the heart of Plaintiffs' suit against Defendant is the parties' insurance coverage dispute. It is Plaintiffs' position that pursuant to the Policy, State Farm should have provided coverage for all of the water damage because it was caused entirely by water overflowing from the Property's drainage system installed on the lower level of the house.  To resolve the dispute, the Court first examines the language of the Policy.

To begin, interpretation of an insurance contract or policy is a legal question typically reserved for a court. *Sealed Air Corp. v. Royal Indemn. Co.*, 404 N.J. Super. 363, 375 (App. Div.), *certif. denied*, 196 N.J. 601 (2008).  In that regard, as a general matter, "[i]nsurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'"  *Memorial Properties, LLC v. Zurich American Ins. Co.*, 210 N.J. 512, 525 (2012) (quoting *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010)).  It is, thus, a contractual principle that courts must give the policy terms their plain and ordinary meaning. *Id.* Only when a policy's language is ambiguous, may a court rely upon extrinsic or parol evidence to

determine the intent of the parties; however, where the language of the contract is clear, extrinsic evidence may not be considered. *Chubb Custom Ins. Co. v. Prudential Ins. Co.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry.").  Courts must not "write for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529 (1989).

A "genuine ambiguity" exists only "where the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." *Botti v. CNA Ins. Co.*, 361 N.J. Super. 217, 224 (App. Div. 2003) (citations and quotations omitted).  When a contract contains ambiguous language and yields two interpretations, the ambiguities should be resolved in favor of the insured. *Rothschild v. Foremost Ins. Co.*, 653 F. Supp. 2d 526, 532 (D.N.J. 2009); *Gibson v. Callaghan*, 158 N.J. 662, 670-71 (1999).

Here, it is important to point out that the parties' dispute does not center on any particular wording of the Policy.  Indeed, the language of the Policy is sufficiently clear to determine the scope of coverage.  Since I have delineated the Policy's relevant terms earlier in this Opinion, I summarize them here:

1) Water damages are covered if they are the result of back-up flow caused by water from the plumbing system inside the interior of the dwelling, or from overflow within a system designed to remove subsurface water in the foundation area.

2) Water damages are not covered if they are the result of either flood water, water or sewage that entered through sewers or drains from outside the residence premises, or water that leaked into the dwelling.

3) The Policy does not cover any damages which would not have occurred in the absence of one or more of the excluded events (as mentioned in point 2).  Thus, if Plaintiffs' damages were concurrently caused by both flooding and overflow water from the premises' drainage system, Plaintiffs are not covered for that damage.  To establish covered damages, Plaintiffs have to demonstrate that the back-up flow directly, and solely, caused the damages.

Next, to establish insurance coverage, the insured, such as Plaintiffs, "bears the initial burden of showing that the harm [claimed] . . . falls within the scope of the policy." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009); *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996) (burden is on the insured "to bring the claim within the basic terms of the policy"); *Hartford Acci. & Indem. Co. v. Aetna Life & Casualty Ins. Co.*, 98 N.J. 18, 26 (1984); *Cumberland County v. GSP Recycling Co.*, 358 N.J. Super. 484, 503 (App. Div.) *certif. denied*, 177 N.J. 222 (2003); *see Building Materials Corp. of Am. v. Allstate Ins. Co.*, 424 N.J. Super. 448, 464 (App. Div. 2012)(finding that plaintiff "must first establish that its claim is covered under the policy's ensuring clause."). Only if the plaintiff satisfies this burden, does the burden shift to the defendant insurance company to show that an exclusion applies. *Estate of Mehlman*, 589 F.3d at 111. Put differently, "[f]or purposes of obtaining summary judgment, [the insurer's] burden [i]s to show that, factually, plaintiff had failed to meet its prima facie case," or that "as a matter of law, [the insurer] had demonstrated the applicability of an exclusion thereby negating coverage." *Adron, Inc. v. Home Ins. Co.*, 292 N.J. Super. 463, 473 (App. Div. 1996).

Here, Plaintiffs bear the initial burden of demonstrating that there is a genuine issue of material fact that all of the damage that the Property suffered is covered under the Policy, which only provides coverage for damage from sewer and drain back-up. Indeed, Plaintiffs' assertion is contrary to what Defendant's investigation had revealed – that flood and surface water inundated the Property and entered the house from the outside. Based on the record before me, Plaintiffs have not provided any evidentiary support — other than their own say-so — that would show that the damages for which they now seek payment were caused "solely" by water or sewage that entered through a drain in their house. Perhaps acknowledging their deficiency in this regard,

Plaintiffs advance two arguments to excuse their lack of evidence.

First, Plaintiffs argue that the doctrine of spoliation saves their claim because Defendant actively "encouraged" Plaintiffs to remediate the Property, thereby destroying certain crucial evidence. Plaintiffs further argue that Defendant cannot take the position that Plaintiffs lack evidence having "persuaded" Plaintiffs to destroy evidence. However, Plaintiffs' proposed legal theory of "encouraging spoliation" does not exist as a matter of law.

In law, spoliation refers to "'the hiding or destroying of litigation evidence, generally by an adverse party.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320 (3d Cir. 2014)(quoting *Rosenblit v. Zimmerman*, 166 N.J. 391 (2001)); *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (finding that spoliation occurs in "situations where a party has altered, destroyed, or failed to produce evidence relevant to an issue in a case." (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). To deter such conduct, spoliation sanctions are imposed to punish the wrongdoer for destroying evidence. *See Williams*, 765 F.3d at 320. In that connection, spoliation occurs where: "[1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73.

Here, Plaintiffs testified that they asked State Farm after Grusendorf came to initially inspect the Property, whether the cleanup process could be initiated. According to Plaintiffs, an agent of State Farm gave Plaintiffs "permission" to clean certain parts of the home, such as bleaching the wall. *See* F. Stiso Dep. at T181:18–T182:15. Based on Plaintiffs' own decision, they now seek to put the blame on Defendant for their conduct. I have extensively researched Plaintiffs' invention of spoliation grounded in the concept of a party encouraging another to

destroy or alter evidence necessary for trial.  Unsurprisingly, my research has not revealed any case law supporting such a theory.  As I have mentioned above, the creation of the spoliation doctrine aims to punish the party who controls and destroys the evidence.  In this case, regardless who may have encouraged Plaintiffs to remediate the Property, Plaintiffs remain the party in control of the evidence at issue.  Because they were in control, Plaintiffs had the opportunity to hire an expert — which they had not done — to examine the Property before any repairs or remediation took place, particularly since Plaintiffs were on notice after Grusendorf's first inspection, that State Farm took the position that not all the damages were covered by the Policy.  Indeed, it cannot be overly emphasized that Plaintiffs chose not to hire any independent expert to either corroborate or refute State Farm's position, not only for the purposes of trial, but also for the claims process.

Even if spoliation based on encouragement is recognized, Plaintiffs have failed to provide any sworn statement regarding the type of clean-up performed, the specific areas cleaned, how evidence was destroyed, or the evidence that was destroyed, and more importantly, how the alleged destroyed evidence is critical to Plaintiffs' case.  This information is important because irrespective of any clean-up performed by Plaintiffs after the initial inspection, physical evidence of the water loss remained in the house even after this litigation was initiated by Plaintiffs; indeed, the complete remediation and repair of the Property did not occur until October 2013, a month after the Complaint was filed in state court,[6] and significantly, one year after the storm.  Certainly, Plaintiffs had many opportunities to hire an expert at any time prior to filing this Complaint to determine the cause of the damages if they thought this evidence would assist in their case, particularly since Plaintiffs had hired a public adjuster and an attorney to represent them with regard to their

---

[6]     This case was removed from state court to this Court by Defendant.

insurance claim.   Accordingly, I do not find that Plaintiffs can invoke the doctrine of spoliation in this case to excuse their lack of evidence.

Next, Plaintiffs argue that the doctrine of equitable estoppel should apply.  According to Plaintiffs, Grusendorf represented to Plaintiffs, when he first inspected the Property, that the insurance claim would be valued at over $100,000.  Plaintiffs maintain that they relied on such a representation in asking for permission from State Farm to clean their property of sewage.  I do not find that equitable estoppel is warranted here.

The doctrine of equitable estoppel prevents a party from repudiating prior conduct if such repudiation "would not be responsive to the demands of justice and good conscience." *Davin, L.L.C. v. Daham*, 329 N.J. Super. 54, 67 (App. Div. 2000) (quoting *Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 339 (1979)). "To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment." *Miller v. Miller*, 97 N.J. 154, 163 (1984). "'A prerequisite of equitable estoppel' is that such reliance be in 'good faith.'" *Phillips v. Borough of Keyport*, 107 F.3d 164, 182 (3d Cir. N.J. 1997) (quoting *Lizak v. Faria*, 96 N.J. 482, 499 (1984)). "The doctrine of equitable estoppel is applied 'only in very compelling circumstances,' 'where the interests of justice, morality and common fairness clearly dictate that course.'" *Palatine I v. Planning Bd. of Township of Montville*, 133 N.J. 546, 560 (1993) (citations omitted).

In an insurance context, a carrier may be estopped from denying coverage "despite a clear contractual provision excluding the claim from the coverage of the policy." *Griggs v. Bertram*, 88 N.J. 347, 355-56 (1982). Most frequently, estoppel is applied in situations where an insurer

undertakes to defend a lawsuit based on a claim against the insured party. *Id.*; *see Merchants Indemnity Corp. v. Eggleston*, 37 N.J. 114, 127-129 (1962); *Sussex Mutual Ins. Co. v. Hala Cleaners, Inc.*, 75 N.J. 117, 125 (1977). This reasoning has been applied to situations where the insurer has assumed control of a potential lawsuit before a complaint is filed. *See Sneed v. Concord Ins. Co.*, 98 N.J. Super. 306, 320 (App. Div. 1967); *Hanover Ins. Group v. Cameron*, 122 N.J. Super. 51, 65-66 (Ch. Div. 1973). The rationale behind estoppel is that the actions of the insurer caused the insured party to justifiably rely on the insurer to "protect it under its policy and to be responsible for any judgment against it." *Griggs*, 88 N.J. at 356-57; *see Eggleston*, 37 N.J. at 127. Such reasonable reliance would make it inherently inequitable for the insurer to deny coverage of a claim related to the subject to the lawsuit. *Griggs*, 88 N.J. at 356.

Here, under the circumstances of this case, equitable estoppel clearly does not apply. First, Plaintiffs cannot show that a promise was made by State Farm. In Plaintiffs' Statement of Undisputed Material Fact, Plaintiffs state that "[d]uring the initial inspection of the property, Defendant's representative, Bradley Grusendorf, stated that Plaintiffs' claim would be for approximately $150,000." Pls.' Stmt. at ¶ 9. However, as matter of law, no reasonable jury would find that this statement constitutes a promise to pay. Indeed, there was no promise made by Grusendorf indicating that Plaintiffs' entire claim would be covered under the Policy's back-up provision. In fact, Grusendorf testified in his deposition that his statement to the Stisos at the end of his first inspection related to the size of the entire loss, not the amount of the loss that would be covered under the back-up provision. Grusendorf stated: "Mr. Stiso asked me, again, why I was going to review it with management and bring someone else out. I explained to him that it was a bigger loss, and so forth, and that I wanted to make sure everything was right. He said well, you do this quite often. What is your determination on the damages I have? I said – told him that I

believed he had a six-figure loss, but that not all of it was covered."  Grusendorf Dep. at T77:13-21.

Even Mrs. Stiso testimony at her deposition was consistent with Grusendorf's statement: "[Grusendorf] went through everything.  He was there a couple of hours.  We walked through everything. At that time it was clean.  Everybody threw everything out.  He saw that we threw everything out.  He left.  He said he would be here a good year, you know, because he was working and he said that it should be over a hundred thousand – well into six figures of *damage*, not including contents."  M. Stiso Dep. at T89:24-T90:1-10 (emphasized added).  Based on Mrs. Stiso's understanding, Grusendorf did not make any promise, on State Farm's behalf, that Plaintiffs were in fact receiving over $100,000 in claim *coverage*, as opposed to a general statement regarding the size of the loss.  Accordingly, I find that no reasonable jury would construe such a statement as a promise to pay Plaintiffs certain amount of coverage, and therefore, I reject Plaintiffs' attempt to invoke equitable estoppel.

Because I have determined that Plaintiffs have failed to meet their burden of showing that their entire loss was covered by the Policy, I need not discuss in detail Defendant's burden of proving that an exclusion applies.  However, for the sake of completeness, I will comment on that aspect of the motion.  Based on the record before me, I find that Defendant has shown that the claimed loss to the Property by Plaintiffs in this case was *not* caused solely by water or sewage from the plumbing system inside the residence.[7]  According to uncontroverted evidence, State

---

[7]     I note that the Policy makes clear that it does "not insure for such loss regardless of: (a) cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[.]"  The Policy at p.9.  This language is also characterized as a "lead-in," which means that there is no coverage when flood, surface water or other causes, contributes to the loss, regardless of whether any "other causes,"

Farm's representatives, on several occasions, investigated the Property and determined that, at most, six inches of water entered Plaintiffs' house through the lower level bathroom drains. State Farm paid Plaintiffs for the portion of the damages it concluded was caused by this back-up and, therefore, covered by the Policy.

State Farm further hired an expert, Gary L. Popolizio, P.E., who corroborated its claim determination.[8]  After inspecting the Property, Mr. Popolizio essentially opined that "the cause of the water damage incurred to the subject residence . . . was from flooding due to the rise in sea level within the Atlantic Ocean incurred from the surge effects of 'Superstorm Sand.'  It is also my opinion based upon a reasonable degree of engineering and construction certainty that this water damage was not caused by a backup of a drain or sewer system within the home." Popolizio's Report dated January 27, 2015, p. 9.  Indeed, the report goes on to explain that "[i]mplications that a backing up of the sanitary sewer drain ahead of a rising ocean and flood waters into the subject home [] falls outside reasonable professional logic and fact." *Id.* at p. 16.

Plaintiffs have not offered any evidence or expert opinion in response to Mr. Popolizio's expert conclusions, but their own self-serving statements.  Indeed, Plaintiffs have admitted that they did not personally witness the flooding, *see* M. Stiso Dep. at T77:15-18; F. Stiso Dep. at T131:18-24, did not return to the property until several days after the storm, *see* M. Stiso Dep. at

---

even an otherwise covered loss, also contributed.  *See Colella v. State Farm Fire and Cas. Co.*, 407 Fed. Appx. 616, 622 (3d Cir. 2011)(finding that lead-in clauses preclude coverage when both a covered and uncovered cause contribute to the loss).

[8]     Expert testimony in this case is critical because the causation issues here requires "specialized knowledge" and is therefore, beyond the ken of a lay person. *See Plywood Property Assocs. v. National Flood Ins. Program*, 928 F. Supp. 500, 507 (D.N.J. 1996)(finding that expert testimony is necessary to prove that the damages claimed were caused by flood); *see, e.g., United States Fire Ins. Co. v. Omnova Solutions, Inc.*, No. 10-1085, 2013 U.S. Dist. LEXIS 85576 (W.D. Pa. Jun. 18, 2013); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457 (5th Cir. 2015).

T81:21-T82:7, did not personally witness sewage entering the house, *see* id at T159:14-21, and have no knowledge which drains experienced a back-up, *see* F. Stiso Dep. at T151:10-14.  Yet, Plaintiffs assert here — without any corroborating evidence or expert testimony — that the backup of sewer and drain waters reached a height of four and one half feet and that no outside flood waters entered Plaintiffs' premises.  Based on no credible evidence, this assertion is not only conclusory, but speculative.

While Plaintiffs further argue that this Court may not grant summary judgment based on Defendant's expert alone, the Court finds that Plaintiffs have failed to without proffer any expert or evidence to refute Mr. Popolizio's conclusions, and thus, the Court may rely on Defendant's expert in granting summary judgment here.  *See, e.g., Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 361 (D.N.J. 1995)(finding that where plaintiff had no expert on exposure to toxin to counter defense experts, he could not "prove causation, and summary judgment . . . must be granted."); *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 42 n.3 (S.D. Fla. 1986) (noting that, "[w]here, as here, an issue is one of the kind on which expert testimony must be presented, and the affidavit of the expert is uncontradicted, summary judgment is proper"); *Brown v. Kordis*, 46 Fed. Appx. 315, 317 (6th Cir. 2002) (holding that "the district court did not err in granting summary judgment" since the "unrebutted expert testimony" left no genuine issue of material fact); *Vans v. Mentor Corp.*, 2005 U.S. Dist. LEXIS 37069, at *7 (E.D. Va. Jun. 28, 2005) (finding that the Defendant was entitled to summary judgment because "Plaintiff's speculative evidence [was] countered by [Defendant's] unrebutted expert testimony"); *Sierra Club v. Ga. Power Co.*, 2007 U.S. Dist. LEXIS 100219, at *25 (N.D. Ga. Jan. 11, 2007) (ruling that since the defendant "has presented powerful and uncontradicted expert testimony," the defendant is entitled to summary judgment).

Accordingly, because I am satisfied that Defendant has proven that the claimed losses by

Plaintiff fall within one of the Policy's exclusions, and Plaintiffs have failed to establish their *prima facie* case for breach of the Policy, summary judgment is appropriate on Plaintiffs' breach of contract claim; it is dismissed.

### III.    Breach of the Implied Covenant of Good Faith and Fair Dealing

I note that both Plaintiffs' causes of action of (1) the breach of the implied covenant of good faith and fair dealing and (2) bad faith, are similar in nature, and therefore, these claims will be analyzed in tandem. *See Laing v. Am. Strategic Ins. Corp.*, Civ. No. 14-1103, 2014 U.S. Dist. LEXIS 139739, at *2 (D.N.J. Oct. 1, 2014) ("under New Jersey law, these two claims are tantamount to the same cause of action").  The New Jersey Supreme Court has recognized a claim arising from an insurer's "bad faith" failure to pay a first-party claim.  However, to prove such a claim, the plaintiff must establish that (1) the insurer lacked a fairly debatable reason for denying coverage, and (2) insurer knew of or recklessly disregarded the lack of a reasonable basis for denying coverage.  *See Pickett v. Llyod's*, 131 N.J. 457, 472 (1993); *Senft v. Fireman's Fund Ins. Co.*, No. 14-7805, 2015 U.S. Dist. LEXIS 61870, at *8 (D.N.J. May 12, 2015).

Here, Plaintiffs clearly have not established these above-referenced factors because they have failed to show, as discussed at length *supra*, that Defendant lacked a reasonable basis for denying coverage.  Indeed, I have granted summary judgment on Plaintiffs' breach of contract claim.  To summarize, State Farm sent multiple representatives to investigate the damages caused to the Property.  Because it determined that at most, only six inches of back up from the lower level drains and four to five sheet of flood waters that entered the house, collectively, caused the extensive water damage, State Farm partially disclaimed Plaintiffs' insurance claims.  Nothing State Farm had done convinces me that it had no reasonable basis for denying certain coverage.

Therefore, summary judgment is appropriate on these two counts.[9]

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED** and the following causes of action are dismissed: Count I, breach of contract; Count 2, breach of the implied covenant of good faith and fair dealing; and Count 3, bad faith.


Dated: November 18, 2015                                          /s/    Freda L. Wolfson
                                                                 Freda L. Wolfson, U.S.D.J.

---

[9]      Additionally, for the same reasons, Plaintiffs' claim for punitive damages under these now-dismissed causes of action is dismissed.  However, to the extent that Plaintiffs have pled punitive damages under other claims in the Complaint, those remain.